HARRY GWYNN, *Appellant* v. CARY A. HARDEE AS GOVERNOR OF THE STATE OF FLORIDA; H. CLAY CRAWFORD, AS SECRETARY OF STATE OF THE STATE OF FLORIDA; RIVERS H. BUFORD, AS ATTORNEY GENERAL OF THE STATE OF FLORIDA; ERNEST AMOS, AS COMPTROLLER OF THE STATE OF FLORIDA; JOHN C. LUNING AS TREASURER OF THE STATE OF FLORIDA; W. S. CAWTHON AS SUPERINTENDENT OF PUBLIC INSTRUCTION OF THE STATE OF FLORIDA; NATHAN MAYO, AS COMMISSIONER OF AGRICULTURE OF THE STATE OF FLORIDA; AND THE SAID CARY A. HARDEE, H. CLAY CRAWFORD, RIVERS H. BUFORD, ERNEST AMOS, JOHN C. LUNING, W. S. CAWTHON AND NATHAN MAYO, AS MEMBERS OF AND COLLECTIVELY CONSTITUTING THE BOARD OF COMMISSIONERS OF STATE INSTITUTIONS AND STATE SCHOOL BOOK COMMISSION OF THE STATE OF FLORIDA, *Appellees.*

En Banc.

Opinion Filed August 5, 1926.

Petition for rehearing denied November 2, 1926.

1. While the presumption is that the enrolled bill, as signed by the legislative officers and filed with the Secretary of State,

is the bill as it passed, yet this presumption is not conclusive, and when it is shown from the Legislative Journals that a bill, though engrossed and enrolled and signed by the legislative officers, contains provisions that have not passed both houses, such provisions will be held spurious, and not a part of the law.

2. In determining whether statutes, which are apparently valid enactments, have been properly and constitutionally passed, this court has repeatedly resorted to the Journals of the sessions of the legislature in which such statutes were enacted. State *ex rel.* Markens v. Brown, 20 Fla. 407; State *ex rel.* Boyd v. Deal, 24 Fla. 293, 4 South. Rep. 899; State *ex rel.* Attorney General v. Green, 36 Fla. 154, 18 South. Rep. 334; Wade v. Atlantic Lbr. Co., 51 Fla. 628, 41 South. Rep. 72; Amos v. Moseley, 74 Fla. 555, 77 South. Rep. 619.

3. The courts of this State will take judicial notice of the Journals of the House of Representatives and the Senate, and of their contents. Amos v. Moseley, 74 Fla. 555, 77 South. Rep. 619.

4. When an answer, as in this case, is sufficient by reference and otherwise to direct the attention of the court to the Legislative Journals, showing that a section of an Act was never passed by the legislature, it is the duty of the court to determine from the Legislative Journals whether the Act, or any section thereof, was not passed by the law-making power.

5. Under the provisions of Section 94, Revised General Statutes of Florida, all original Acts and resolutions passed by the legislature, and all other original papers acted upon thereby, together with the Journal of the Senate and the Journal of the House of Representatives immediately upon the adjournment thereof, are deposited with and preserved in the office of the Secretary of State.

6. Under the provisions of Section 90, Revised General Statutes of Florida, the Great Seal of the State of Florida is made the seal of the Secretary of State, and he may certify under

this seal copies of any of the documents, by law placed in his custody, keeping and care, and such copy shall have the same force and effect as the original would have, Section 2725, Revised General. Statutes, making the certificate of the Secretary of State, under his seal, *prima facie* evidence of the facts therein contained.

7.  Under the provisions of Sections 94 and 90, Revised General Statutes of Florida, the copy of the original Committee Substitute for Senate Bill No. 246, with the amendments thereto, and the Minority Report of the Conference Committee, certified to by the Secretary of State, under his official seal, as being copies of the original papers filed in his office, were proper evidence before the court.

8.  The certificate of the Secretary of State, under his official seal, that the documents mentioned in the foregoing headnote were all the original documents relating to Committee Substitute for Senate Bill No. 246, filed in his office, was, under the provisions of Section 2725, Revised General Statutes, *prima facie* evidence of the facts contained in the certificate.

9.  That portion of Section 12, Chapter 8500, reading as follows: "Provided, that the commission shall stipulate in any contract for the supplying of any book or books as herein provided, that the contractor or contractors shall take up school books, in use at the time of making any contract, and receive same in exchange for new books allowing price for such old books not less than fifty per cent of the contract price of the new books," was never passed by the legislature, and is therefore void and ineffective.

10.  Although a portion of an Act be void because unconstitutional, it will not necessarily render the entire Act inoperative, if the good and the bad can be separated, and the legislative purpose expressed in the valid portion be given effect independent of the void part. Bucky v. Willard, 16 Fla. 330; State *ex rel.* Arpen v. Brown, 19 Fla. 563; State *ex rel.* Moodie v. Bryan, 50 Fla. 293, 39 South. Rep. 929; State *ex rel.* Clarkson v. Philips, 70 Fla. 340, 70 South. Rep. 367.

18—Vol. 92.

11. "The bill as presented to the Governor for his action should be the same in its legal effect as to the same matter as it was when it passed the two houses of the Legislature. If subsequent to its passage by such houses, and before its approval by the Governor, provisions have been inserted in it which change the legal effect of it as to a matter regulated by it before such insertion, the entire approved bill will be void. *If, however, the genuine provisions are distinct from and independent of the spurious, it seems that they will not be affected by the latter.* (Italics supplied.) · State *ex rel.* Boyd v. Deal, 24 Fla. 293, 4 South. Rep. 899.

12. There are more compelling reasons for excluding a spurious portion of the law because never enacted, and permitting the other portions validly enacted to remain, than for permitting to remain as enforceable valid portions of an Act, parts of which have been held void because unconstitutional. In the former situation, unless the spurious matter is taken out and the law permitted to stand as it passed, the entire legislative intent would be thwarted because of the matters interpolated into the bill, by mistake or otherwise, which were never intended by the legislative bodies.

13. The Legislative Journals and original records certified by the Secretary of State show that the proviso to Section 12, Chapter 8500, Acts of 1921, was not passed by the Legislature. The bill, as authenticated by legislative officers and presented to the Governor, was the bill as passed by the legislature, except that the proviso to Section 12 was spurious and no part of the bill as passed. Such proviso being invalid, is not law, and its incorporation in the bill as passed should not be held to invalidate the entire Act, which is complete in itself without the spurious part. The Act without the proviso must be held to express the legislative intent, because it was passed by the legislature.

14. Chapter 8500, Laws of Florida, Acts of 1921, with that portion of Section 12 eliminated and stricken which reads as follows: "Provided, that the commission shall stipulate in any contracts for the supplying of any book or books, as

herein provided, that the Contractor or Contractors, shall take up school books in use at time of making any contract, and receive same in exchange for new books allowing a price for such old books not less than fifty per cent. of the contract price of the new books," is a valid and enforceable statute.

15. Section 677, Revised General Statutes of Florida, which embraced the same provision that was inadvertently written into Section 12, Chapter 8500, was specifically repealed by Section 22 of Chapter 8500.

An Appeal from the Circuit Court for Leon County; E. C. Love, Judge.

Affirmed.

*Wm. H. Malone* and *George M. Powell,* for Appellant;

*Rivers Buford,* Attorney General, and *Myers & Myers,* for Appellees;

*Cooper, Cooper & Osborne,* as *amici curiae.*

CAMPBELL, C. J.—The appellant as complainant in the court below applied for a temporary injunction against the appellees as respondents, restraining them and each of them and their agents, inferior officers and servants from performing or in any manner acting under, or doing any matter or thing in pursuance of or in the furtherance, enforcement or performance, of either or any of certain contracts alleged in the bill to have been entered into between them and certain book companies, for the furnishing of school text-books, under the provisions of Chapter 8500, Laws of Florida, Acts of 1921, approved by the Governor June 14, 1921, the legislature having adjourned *sine die* June 3, 1921. Crouissant v. DeSoto I. Co. 87 Fla. 530.

The basis for said restraining order, applied for, being that the respondents, as the State School Book Commission, had unlawfully and without warrant of law, and in violation of the terms and provisions of Chapter 8500, Laws of Florida, Acts of 1921, and in violation of the rights of the complainant as a citizen and taxpayer, and as the parent and guardian of two children named in the bill of complaint, whom he was required to send to the public free schools of the State, and in violation of the rights of all others similarly situated, inserted or caused to be inserted in the contracts so entered into the following proviso, to-wit: *Provided that the provisions in Section 12, requiring the contractor or contractors to take up school books in use at the time of making this contract, and receive same in exchange for new books, allowing a price for such old books of not less than fifty per cent of the contract price of the new books, does not apply to this contract; and the party of the second part will not be required to make an exchange price other than that named in the contractors' bid.*

It is alleged in the bill of complaint "that in and by the Chapter 8500, Acts of 1921, Laws of Florida, it was also among other things, provided as follows: 'Sec. 12. It shall be the duty and be required of all contractors to plainly print, stamp or paste a printed slip on the back or inside cover of each book furnished under their contracts, both the contract retail price and exchange price at which books are to be furnished. Provided, that the Commission shall stipulate in any contract for the supplying of any book or books, as herein provided, that the contractor or contractors, shall take up school books in use at the time of making any contract, and receive same in exchange for new books allowing a price for such old books not less than fifty per cent. of the contract price of the new books.' "

"That the language of the proviso in said Section of said Chapter 8500 was contained in and brought over from Section 677 of the Revised General Statutes of the State of Florida."

It is further alleged, among other things, that by reason of the provision in the contracts, that the above quoted provision in Section 12, should not apply, the contracts are null and void, and that if the respondents are permitted to carry out their alleged unlawful acts and doings, great inconvenience and expense will be unlawfully and oppressively inflicted upon complainant and all other persons similarly situated.

The bill of complaint was sworn to by the complainant.

The respondents filed an answer admitting some of the allegations of the bill, and denying others, among which are the allegations of unlawful and unwarranted acts of the respondents, in entering into the contracts, incorporating the proviso objected to.

In paragraph four of the answer, the respondents undertake to set forth the history of the passage of the Act of the Legislature, now known as Chapter 8500, Laws of Florida, as shown from the corrected Senate Journal and corrected House Journal of the Legislative Session, 1921, the Act being referred to in said Journals sometime as Senate Bill No. 246, and sometimes as Committee Substitute for-Senate Bill No. 246. After giving such history it is further alleged in said paragraph four of the answer, as follows: "That from the Journal entries of the Senate and House of Representatives aforesaid, all of which appears upon the record, these respondents aver that the Legislature of the State of Florida did not at any time incorporate in Section 12, the following language, to-wit: 'Provided, that the Commission shall stipulate in any contract of the supplying of any book or books as herein

provided, that the contractor or contractors, shall take up school books in use at the time of making any contract, and receive same in exchange for new books, allowing a price for such books not less than fifty per cent. of the contract price of the new books.'

"But that Section 12 of Substitute for Senate Bill No. 246, which afterward became and is now Chapter 8500, Laws of Florida, was passed by the Legislature of the State of Florida by a majority vote of the House of Representatives and of the Senate, reading as follows, to-wit:

"Section 12. It shall be the duty and be required of all contractors to plainly print, stamp or paste a printed slip on the back or the inside cover of each book furnished under their contracts, both the contract retail price and the exchange price at which books are to be furnished. Any bidder or publisher making a bid for the adoption of any book or books under this Act shall state in his bid or proposal both the retail price and the exchange price at which books shall be furnished; the retail price being the price required when the book is bought and the exchange price being the price at which a book is furnished when an old book of like kind and grade is offered in exchange. The period for the exchange price of all books shall be one year from the date the contract becomes effective,' and not otherwise.

"That the proviso as contained in the enrolled copy of said bill, and as contained in the printed Act, was inadvertently incorporated in the engrossed bill, and from that copied in the enrolled bill by inadvertence and mistake of the Committee Clerk, and was not at any time the Legislative Act of the Legislature of Florida, at the Session of 1921.''

To the answer there were attached several exhibits referred to therein, among them being a copy of Committee

Substitute for Senate Bill No. 246 copies · of proposed amendments thereto, and the Minority report of the Conference Committee, on said bill, which was adopted as is alleged in the answer. The above mentioned exhibits were attached to a certificate of the Secretary of State, under the Great Seal of the State of Florida, reading as follows: · "I, H. Clay Crawford, Secretary of State of the State of Florida, do hereby certify that the Senate Bill together with proposed amendments and the Copy of Minority report hereto attached are the identical papers, which were transmitted to this office with engrossed Bill No. 246 of the Legislature, Session of 1921, which said engrossed bill appears as Chapter 8500, Acts of the Legislature of 1921, and that such papers were filed as and purport to be the original documents introduced in the Legislature of the Session of 1921, as appears by the endorsements thereof."

The court below having before it the sworn bill of complaint, and exhibits thereto, the answer of the respondents with its exhibits, together with the affidavit of B. A. Meginniss, Chief Clerk of the House of Representatives, at the Session of 1921, made an order or decree denying the application for temporary injunction.

This appeal is taken from the interlocutory order denying the injunction.

In the consideration of this appeal there are two principal questions to be determined, the answer to which will decide whether or not the court below erred in its decree. The first of these questions being, Was that part of Section 12, Chapter 8500, Laws of Florida, Acts of 1921, containing the proviso, "Provided that the Commission shall stipulate in the contract for supplying of any book or books as herein provided, that the Contractor or Contractors, shall take up school books in use at the time of mak-

ing any contract, and receive same in exchange for new books, allowing a price for such old books not less than fifty per cent. of the contract price of the new books,'' passed by the Legislature of Florida at its Session 1921?

The second question to be determined is, If the above quoted provision incorporated in said Section 12, was not passed by the Legislature, but was inadvertently and by mistake of the Committee Clerks written into the engrossed and enrolled copies of the bill, after its passage, and is therefore spurious; what shall be done with such spurious part of Section 12? Or was such spurious portion of Section 12, Chapter 8500, binding upon the respondents, in making the contract set forth in the bill of complaint?

While the presumption is that the enrolled bill as signed by the Legislative officers, and filed with the Secretary of State, is the bill as it passed, yet this presumption is not conclusive, and when it is shown from the Legislative Journals, that a bill, though engrossed and enrolled, and signed by the Legislative officers, contains provisions that have not passed both houses, such provisions will be held spurious and not a part of the law. As was said by Mr. Justice Cookrell in the case of Wade v. Atlantic Lumber Company, 51 Fla. 628, text 633, 41 South. Rep. 72, ''This court is firmly committed to the holding that when the Journals speak they control, and as against such proof the enrolled bill is not conclusive.''

In determining whether statutes which are apparently valid enactments, have been properly and constitutionally passed, this court has repeatedly resorted to the Journals of the Sessions of the Legislature in which such statutes were enacted. State ex rel. Markens v. Brown, 20 Fla. 407; State ex rel. Boyd v. Deal, 24 Fla. 293, 4 South. Rep. 899; State ex rel. Attorney General v. Green, 36 Fla. 154,

18 South. Rep. 334; Wade v. Atlantic Lumber Co., *supra;* Amos v. Moseley, 74 Fla. 555, 77 South. Rep. 619.

The courts of this State will take Judicial Notice of the Journals of the House of Representatives and the Senate, and of their contents. Amos v. Moseley, *supra.*

When an answer, as in this case, is sufficient by reference and otherwise to direct the attention of the court to the Legislative Journals, showing that a Section of an Act was never passed by the Legislature, it is the duty of the court to determine from the Legislative Journals whether the Act or any Section thereof was not passed by the law-making power.

We have examined the Journals of both the Senate and the House of Representatives, of the 1921 Session of the Legislature of Florida, and it appears therefrom that the allegations of the answer, giving the history of Senate Bill No. 246, entitled, ''A bill to be entitled An Act to Create a State School Book Commission, to procure a uniform series of text-books for the use of the elementary and high schools of the State of Florida; to define the duties and powers of said Commission; to make appropriation for carrying the Act into effect, providing penalties for violation of the same; and to repeal Sections 668 to 686, both inclusive, of the Revised General Statutes of Florida, relating to a uiform system of text-books,'' are sustained.

In addition to the Legislative Journals of which the court below and this court take judicial knowledge, there was further evidence before the court to sustain the allegations in the answer that the alleged spurious part of Section 12, was not enacted by the Legislature.

Under the provisons of Section 94, Revised General Statutes of Florida, all original Acts and resolutions passed by the Legislature, and all other original papers acted upon thereby, together with the Journal of the Senate and the

Journal of the House of Representatives immediately upon the adjournment thereof, are deposited with, and preserved in the office of the Secretary of State.

Under the provisions of Section 90, Revised General Statutes, the Great Seal of the State of Florida, is made the Seal of the Secretary of State, and he may certify under this seal copies of any of the documents, by law placed in his custody, keeping and care, and such copy shall have the same force and effect, as the original would have. Section 2725, Revised General Statutes, making the certificate of the Secretary of State under his seal, *prima facie* evidence of the facts therein contained.

There is attached to the answer in this case a copy of the original Committee Substitute for Senate Bill No. 246, with the amendments thereto, and the Minority Report of the Conference Committee certified to by the Secretary of State, as being copies of the original papers filed in his office. These certified copies and certificate of the Secretary of State being given under his seal, were proper evidence before the court. It clearly appears therefrom, that Section 12, in the Substitute for Senate Bill No. 246, is as contended by the respondents, and that there is no amendment thereto, as shown from the original papers, save those shown by the Journals to have been passed. The adoption of the Minority Report of the Conference Committee having defeated the amendment constituting the proviso, now appearing in Section 12 of the printed law.

That portion then of Section 12, Chapter 8500, reading as follows: "Provided, that the commission shall stipulate in any contract for the supplying of any book or books as herein provided, that the contractor or contractors shall take up school books, in use at the time of making any contract, and receive same in exchange for new books allow-

ing price for such old books not less than fifty per cent. of the contract price of the new books,'' was never passed by the Legislature and is therefore void and ineffective.

Having found that this provision in the statute is void, we are confronted with the second question: What shall be done with this spurious clause in the law? Or, was such spurious portion of Section 12, Chapter 8500, binding upon the respondents in making the contracts set forth in the bill of complaint?

This court has on several occasions held, that although a portion of an Act be void, because unconstitutional, it will not necessarily render the entire Act inoperative, if the good and the bad can be separated, and the legislative purpose expressed in the valid portion be given effect, independent of the void part. Bucky v. Willard, 16 Fla. 330; 68% State ex rel. Arpen v. Brown, 19 Fla. 563; State ex rel. Moodie v. Bryan, 50 Fla. 293, 39 South. Rep. 929; State ex rel. Clarkson v. Philips, 70 Fla. 340, 70 South. Rep. 367.

In the case of State ex rel. Boyd v. Deal, 24 Fla. 293, 4 South. Rep. 899, we held the following: ''The bill as presented to the Governor for his action should be the same in its legal effect as to the same matter as it was when it passed the two houses of the Legislature. If subsequent to its passage by such houses, and before its approval by the Governor, provisions have been inserted in it which change the legal effect of it as to a matter regulated by it before such insertion, the entire approved bill will be void. *If, however, the genuine provisions are distinct from and independent of the spurious, it seems that they will not be affected by the latter.*'' (Italics ours.)

Chief Justice Maxwell in his separate opinion as to the conclusions reached by the court in the case of Boyd v. Deal, *supra*, very cogently said: ''In my opinion there is

no just distinction by which the familiar rule that courts may uphold one portion of an act while declaring another portion void, should not apply to an act whose defect arises from one portion of it not having been passed by the Legislature. If that portion can be stricken out and in the language of Cooley, 'that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that rejected, it must be sustained,' I can see no reason why this doctrine should not apply to all statutes alike, whatever may be the grounds of the invalidity of their bad parts. Whatever is void is not law, say the courts. They farther say that which is void in a law may be stricken from it, and that it is their duty if what remains can be enforced independent of the part stricken, to uphold that much; but they nowhere say, and it would be inconsistency to say, that being void for one reason this is unauthorized, while if void for another a different rule may prevail. In every case where part of a law is sustained, to the exclusion of another part, the whole has been approved by the executive, the bad and the good alike. If it has the form of law in a case like the present, as well as in cases where the whole act was passed, it would seem to be making a distinction without a difference to declare the former all void and the latter void only as to its bad parts.''

In State ex rel. Attorney General v. Green, *supra,* Mr. Justice Mabry, in writing the opinion of the court, 36 Fla. page 176 text, after reciting the familiar rule, that although a portion of an act be void because unconstitutional, it will not render the entire act inoperative, says: ''Likewise if an enrolled bill approved by the Governor contain matter not embraced therein when it passed the two Houses of the Legislature, it will not necessarily follow that the whole act is void. If the portion of the act

that has received the approval of the entire legislative department can be separated from the other portion, and the one is not dependent in any manner upon the other, that which has been constitutionally enacted may be enforced as law. In other words, the same rule as to separating matter in an act that has received the joint approval of all the legislative departments, but one part is constitutional, and the other not, will apply to an act where matter finds its way into a bill enrolled for the approval of the Governor that did not exist therein when passed upon by either or both of the Houses of the Legislature.'' Citing Boyd v. Deal, *supra*.

We think the foregoing enunciations by both Chief Justice Maxwell and Mr. Justice Mabry, correctly state the law applicable to the case now before us for consideration.

There are more compelling reasons for excluding a spurious portion of the law because never enacted and permitting the other portion validly enacted to remain, than for permitting to remain as enforceable, valid portions of an act, parts of which have been held void because unconstitutional. In the former situation unless the spurious matter is taken out, and the law permitted to stand as it passed, the entire legislative intent would be thwarted because of the matters interpolated into the bill by mistake or otherwise were never intended by the legislative bodies.

The legislative journals and original records certified by the Secretary of State show that the proviso to Section 12, Chapter 8500, Acts of 1921, was not passed by the Legislature. The bill as authenticated by legislative officers and presented to the Governor, was the bill as passed by the Legislature, except that the proviso to Section 12 was spurious and no part of the bill as passed. Such proviso being invalid is not law, and its incorporation in the bill as passed should not be held to invalidate the entire act which is com-

plete in itself without the spurious part. The act without the proviso must be held to express the legislative intent because it was passed by the Legislature. To say the Governor might have vetoed the bill if it did not contain the spurious part, is a mere conjecture. He did not veto the bill and it became a law the day before he approved it. Crouisant v. DeSoto I. Co., 87 Fla. 530; Sec. 28, Art. III. Const. He had access to the legislative journals and records, and he is not supposed to make a spurious portion of a legislative bill the *sine qua non* of his approval of the bill any more than that he would make an unconstitutional part of a bill the reason for his approval of the bill; for it must be assumed that the Legislature and the Governor intend a valid, effective enactment. If subsequent acts of the Governor may be considered as indicating his conception of the bill, he is here contending that the spurious portion be disregarded. If the spurious portion of the bill here considered be regarded as eliminated, full effect could then be given to the bill as passed by the Legislature thereby effectuating the legislative intent. To give effect to the spurious portion would cause results not intended by the Legislature. To declare the entire act invalid because it contains the spurious matter would frustrate the legislative will, not because of an unconstitutional act or omission of the Legislature, but because by a clerical error a spurious provision was inserted in the bill after its passage. This would destroy a law because by a clerical mistake, a provision not passed by the Legislature was incorporated in the bill as authenticated by the legislative officers, which spurious provision is clearly identified and may be regarded as eliminated and full effect given to the law-making intent as expressed in the provisions that were duly enacted.

That part of Section 12, Chapter 8500, which we have already found to be invalid and of no effect, as it was not

enacted by the law-making bodies, can be identified and taken from the remaining portion of the section, and the Chapter as a whole, leaving the valid enactment of the Legislature, an enforceable statute, and we hold that Chapter 8500, Laws of Florida, Acts of 1921, with that portion of Section 12 eliminated and stricken, which reads as follows, "Provided, that the commission shall stipulate in any contracts for the supplying of any book or books, as herein provided, that the Contractor or Contractors, shall take up schoolbooks in use at time of making any contract, and receive same in exchange for new books, allowing a price for such old books not less than fifty per cent. of the contract price of the new books," is a valid and enforceable statute.

Section 677, Revised General Statutes of Florida, which embraced the same provision, that was inadvertently written into Section 12, Chapter 8500, was specifically repealed by Section 22 of Chapter 8500.

When the State School Book Commission therefore made the contracts with the book companies as alleged, there was no enforceable statute requiring them to write a provision into the contract relative to price to be allowed for old books, as contended by complainant, and the court below did not err in its order denying the temporary injunction.

The decree of the court below denying the temporary injunction is affirmed.

BROWN, C. J., AND WHITFIELD AND STRUM, J., J., AND LONG, CIRCUIT JUDGE, concur;

ELLIS, J., dissents;

TERRELL AND BUFORD, J. J., disqualified.